UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| AZAD HAJI ABDULLAH,<br><br>    Petitioner,<br><br>v.<br><br>AL RAMIREZ,<br><br>    Respondent. | Case No. 1:17-cv-00098-BLW<br>(former case no. 15-mc-08251-BLW)<br><br>**CAPITAL CASE**<br><br>**MEMORANDUM DECISION AND ORDER** |

Pending before the Court in this capital habeas corpus matter are Petitioner's Motion to Stay and Motion for Access to Grand Jury Transcript. (Dkts. 3, 7.) The motions are fully briefed and ripe for adjudication. Having reviewed the record and considered the argument of the parties, the Court enters the following Order.

## REVIEW OF MOTION TO STAY

Petitioner was convicted of first-degree murder and other related crimes arising from an incident of arson at Petitioner's residence, all in a state criminal action in the Fourth Judicial District Court in Ada County, Idaho. Petitioner's sentence of death on the murder charge was imposed on March 4, 2005. Ten years later, on March 2, 2015, the Idaho Supreme Court affirmed Petitioner's convictions and sentences and affirmed dismissal of his post-conviction action. Counting the currently-pending successive post-conviction case, Petitioner's case has been pending in state court for thirteen years.

**MEMORANDUM DECISION AND ORDER - 1**

Petitioner's first federal habeas corpus filings in this Court were on August 25, 2015. He was permitted to file his federal habeas corpus petition at any time within the statutory one-year time frame. He filed his Petition on February 24, 2017. Petitioner now requests that this Court stay this two-and-a-half-year-old action until his successive post-conviction petition is adjudicated, through the level of the Idaho Supreme Court, if necessary. (Dkt. 3.) The case is currently in state district court.

Petitioner's Petition for Writ of Habeas Corpus is the first new capital habeas case filed in the District of Idaho for many years. During those years, the Court has changed many of its procedures to keep up with the evolution of habeas procedural rules. For example, recent case law allows habeas petitioners the opportunity to have de novo evidentiary hearings in federal court on procedurally-defaulted claims, whereas petitioners who properly exhausted their claims in state court are denied that opportunity. *Cf. Martinez v. Ryan*, 566 U.S. 1 (2012), *with Cullen v. Pinholster*, 563 U.S. 170 (2011). Habeas corpus procedure is as confusing as it is complex. Not surprisingly, the United States Supreme Court has suggested that the merits of non-defaulted claims should be heard ahead of other claims where difficult procedural hurdles must be cleared before the merits of those other claims can be addressed. *See Dretke v. Haley*, 541 U.S. 386, 393–94 (2004) ("[A] federal court faced with allegations of actual innocence, whether of the sentence or of the crime charged, must *first address all non-defaulted claims for comparable relief* and other grounds for cause to excuse the procedural default.") (emphasis added). Accordingly, this Court has, in some habeas corpus cases, required

merits-based claims to be briefed and adjudicated ahead of complex procedural issues that would require evidentiary development.

On another procedural front, in an effort to treat petitioners equitably in the face of habeas procedural rules requiring *both* complete exhaustion of claims *and* the filing of the federal petition within one year of finality of the state court judgment, the federal courts have crafted what has become, but was not intended to be, a tangled web of procedural exceptions involving the question of stays—the current issue in Petitioner's case. As a matter of comity, a federal court will not entertain a habeas corpus petition unless the petitioner has exhausted the available state judicial remedies on every ground presented in a petition. *Rose v. Lundy*, 455 U.S. 509, 518-22 (1982). The habeas statute explicitly provides that a habeas petition brought by a person in state custody "shall not be granted unless it appears that … the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A).

However, after *Rose v. Lundy*, Congress's imposition of a one-year statute of limitations and a successive-petitions bar in the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") made federal courts scramble to carve out procedural paths to provide habeas petitioners with every opportunity to both exhaust their state court remedies and file their petitions on time. The stay is one of these procedural paths.

In *Ryan v. Gonzales*, the United States Supreme Court considered the very difficult issue of whether two petitioners' incompetence warranted an indefinite stay of their habeas corpus actions. 568 U.S. 57 (2013). There, the Court reasoned:

**MEMORANDUM DECISION AND ORDER - 3**

> Neither petitioner disputes that "[d]istrict courts ... ordinarily have authority to issue stays, where such a stay would be a proper exercise of discretion." *Rhines v. Weber*, 544 U.S. 269, 276, 125 S.Ct. 1528, 161 L.Ed.2d 440 (2005) (citation omitted); *see also Enelow v. New York Life Ins. Co.*, 293 U.S. 379, 382, 55 S.Ct. 310, 79 L.Ed. 440 (1935) (explaining that a district court may stay a case "pending before it by virtue of its inherent power to control the progress of the cause so as to maintain the orderly processes of justice"). Similarly, both petitioners agree that "AEDPA does not deprive district courts of [this] authority." *Rhines*, supra, at 276, 125 S.Ct. 1528. Petitioners and respondents disagree, however, about the types of situations in which a stay would be appropriate and about the permissible duration of a competency-based stay. We do not presume that district courts need unsolicited advice from us on how to manage their dockets. Rather, the decision to grant a stay, like the decision to grant an evidentiary hearing, is "generally left to the sound discretion of district courts." *Schriro v. Landrigan*, 550 U.S. 465, 473, 127 S.Ct. 1933, 167 L.Ed.2d 836 (2007). For purposes of resolving these cases, it is unnecessary to determine the precise contours of the district court's discretion to issue stays.

*Id.* at 73-74.[1]

In *Rhines v. Weber*, the Court held that federal district courts could use a stay-and-abeyance procedure in "limited circumstances" where the petitioner shows good cause for failing to exhaust, the unexhausted claim is potentially meritorious, and the petitioner has not engaged in abusive litigation tactics or intentional delay. 544 U.S. at 277-78.

---

[1] *Enelow* was overruled on other grounds by *Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271 (1988) (explaining that *Enelow*'s decision that a denial of a stay request for the determination of an equitable defense in an action at law was immediately appealable under the interlocutory appeal rule in § 1292(a)(1) was because law and equity were separate jurisprudential systems in the federal court system in 1935).

**MEMORANDUM DECISION AND ORDER - 4**

In *Pace v. DiGuglielmo*, 544 U.S. 408, 416 (2005), the United States Supreme Court authorized prisoners seeking to "avoid th[e] predicament" of a potentially late filing while they continued trying to exhaust some of their federal claims in state court to use the stay-and-abeyance procedure to file a "protective" petition in federal court to meet the statute of limitations deadline. These "protective" petitions, which have historically been used in other types of cases, put an element of delay back into federal habeas corpus procedure that the Anti-Terrorism and Effective Death Penalty Act was intended to eliminate. Further, the United States Court of Appeals for the Ninth Circuit has declared that (1) the petition in *Pace v. DiGuglielmo* was "not mixed," (2) "the [Supreme] Court gave no indication that its statement applied only to mixed petitions," and (3) therefore, a petitioner now can file an entirely premature protective petition containing *only* unexhausted claims. *Mena v. Long*, 813 F.3d 907, 910 (9th Cir. 2016).

AEDPA has two purposes. One is to "reduce delays in the execution of state and federal criminal sentences, particularly in capital cases." *Woodford v. Garceau*, 538 U.S. 202, 206 (2003). The other is to "balance[] the interests served by the exhaustion requirement and the limitation period by protecting a state prisoner's ability later to apply for federal habeas relief while state remedies are being pursued." *Rhines*, 544 U.S. at 276 (internal quotation marks omitted). The Supreme Court has come right out and said that "[s]taying a federal habeas petition frustrates AEDPA's objective of encouraging finality by allowing a petitioner to delay the resolution of the federal proceedings." *Id*. at 277.

Furthermore, the *Rhines* Court warned: "Stay and abeyance, if employed too frequently, has the potential to undermine [AEDPA's] twin purposes." *Id*. In addition, the Supreme Court observed:

> [N]ot all petitioners have an incentive to obtain federal relief as quickly as possible. In particular, capital petitioners might deliberately engage in dilatory tactics to prolong their incarceration and avoid execution of the sentence of death. Without time limits [on stays], petitioners could frustrate AEDPA's goal of finality by dragging out indefinitely their federal habeas review.

*Id*. at 277–78. When a habeas petitioner "engages in abusive litigation tactics or intentional delay, the district court should not grant him a stay at all." *Id*. at 278.

This history shows that court precedent on stays has evolved from *Rhines v. Weber*'s admonition that "stay and abeyance should be available only in limited circumstances," 544 U.S. at 277, to *Mena v. Long*'s broad invitation that seems to say, "Come one, come all," regardless of whether *any* attempt at state court exhaustion has been made, 813 F.3d at 910. This liberal philosophy has filled the federal district court dockets with thousands of premature cases that AEDPA never intended to be here.

Given the age of Petitioner's case already—thirteen years post-conviction—and the fact that time only dims witness memories and makes stale other evidence, the Court has determined that it will exercise its discretion to require Petitioner to proceed on some of his fully-exhausted claims and deny the stay request without prejudice to Petitioner renewing it after adjudication of the fully-exhausted claims, if necessary. The Court goes forward with the case in this manner, believing that this case management plan best

resolves the "the tension between the swift vindication of the petitioner's constitutional rights and the comity principles undergirding the doctrine" of full exhaustion. *Galtieri v. Wainwright*, 582 F.2d 348, 354 (5th Cir. 1978).

In addition, the Court has reviewed the claims in the federal Petition and compared them to the claims already decided by, and currently before, the Idaho courts to ensure that the claims are not intertwined with each other[2] *and* that the Idaho Supreme Court has already finally decided the claims. The Court rejects the parties' assertions—made without any factual basis or specific example from Petitioner's case facts—that there is significant overlap between these claims and those pending before the Idaho district court in the successive state post-conviction petition, that litigating the fully-exhausted claims in federal court simultaneously with litigating the unexhausted direct appeal counsel claims in state court will result in "unnecessarily convoluted and piecemeal litigation" (Dkt. 3, p. 2), or that early litigation of the claims ready for adjudication on the merits "would not be sensible or appropriate." (Dkt. 10, p. 2.)

The Court earlier suggested such a case management plan to the parties and asked Petitioner to select a number of these claims that could be subject to early adjudication. In response, Petitioner selected the following as potential candidates:

---

[2] Currently, Petitioner is pursuing ineffective assistance of direct appeal counsel claims in his successive post-conviction action—claims that could not have been brought in his first post-conviction petition because the Idaho capital case scheme requires petitioners to bring their first post-conviction action before direct appeal is completed, thus making it impossible to know whether there are any claims of ineffective assistance of direct appeal counsel claims before the direct appeal is completed. (*See* Dkt. 3, p.1.) For example, in the successive petition, Petitioner has alleged that direct appeal counsel failed to raise or inadequately raised dozens of claims. (*Id.*, p. 2.)

**MEMORANDUM DECISION AND ORDER - 7**

(1) Claim 23: Mr. Abdullah Was Coerced into Not Testifying

(2) Claim 24: The Jury Was Wrongly Instructed on Willfulness

(3) Claim 30: The Idaho Supreme Court Violated Mr. Abdullah's Rights by Retroactively Altering the Elements of Arson

(4) Claim 38: The Trial Court Empaneled Biased Jurors

(5) Claim 44: Mr. Abdullah's Right to Allocute Was Violated

(6) Claim 51: The Instruction on What Would Happen If the Jury Voted for Life Was Unconstitutional

(7) Claim 54: There Was No Death Penalty in Effect at the Time of the Crime

(8) Claim 55: The Aggravators Were Not Charged by Indictment, Not Subject to a Finding of Probable Cause, and Not Supported by Facts

Dkt. 11, pp. 2-3.)

Of these suggested claims, the Court concludes that the following shall be presently adjudicated, because they are fully exhausted and not intertwined with other claims that may be unexhausted: Claims 24 (willfulness jury instruction), 30 (altered elements of arson), 38 (biased jurors), 51 (vote for life instruction), 54 (no Idaho death penalty in effect at time of crime), and 55 (aggravators not charged by indictment, no probable cause finding, and not supported by facts). At the end of this phase of litigation, if no relief is warranted, the parties will be given another opportunity to suggest a case management plan to govern the remainder of the claims. By that time, the claims in Petitioner's successive state post-conviction petition may be fully exhausted. If not, a stay may be appropriate, and Petitioner may renew his request at that time.

# MOTION FOR ACCESS TO GRAND JURY TRANSCRIPTS

Petitioner also requests that this Court order that he and his counsel be given possession and unlimited access to the grand jury transcripts. (Dkt. 7.) Currently in place in the closed first state post-conviction matter is an Idaho state district court order prohibiting Petitioner from having a copy of the grand jury transcript in his possession. Petitioner's counsel state that they asked the state court in Petitioner's successive state post-conviction case to reconsider the prohibition on Petitioner retaining the transcript in his cell and to allow the Capital Habeas Unit attorneys possession of the transcript for investigatory purposes, but the state court did not address their request. (Dkts. 7-2, 7-3.)

A court generally does not ignore requests of the parties, for that is the sole purpose of the court's existence, to adjudicate the claims and issues of the parties. It is unclear whether the state district court's failure to address Petitioner's transcript requests was a mere oversight. Therefore, Petitioner's current motion will be denied without prejudice, and Petitioner will be directed to bring the omission to the state court's attention, together with a clear explanation of why Petitioner believes he needs to possess in his cell a copy of the grand jury transcript for his simultaneous federal habeas corpus proceeding, as opposed to simply reading a redacted copy of it in the presence of a Capital Habeas Unit employee or extern. Thereafter, if necessary, this Court will address Petitioner's counsel's need for the transcript, which seems necessary for the thorough investigation of Petitioner's federal habeas claims, but which the state court may want to address, since it is still adjudicating the successive post-conviction petition. The Court

will separately address Petitioner's need for the transcript, but he will be required to make a specific showing that the transcript bears on the merits-based claims currently at issue and that reading a redacted transcript in the presence of his attorney or his attorney's agents would significantly impair his use of the transcript.

## ORDER

**IT IS ORDERED:**

1. Petitioner's Motion to Stay (Dkt. 3) is DENIED without prejudice.
2. Petitioner's Motion for Access to Grand Jury Transcript (Dkt. 7) is DENIED without prejudice.
3. Counsel for the parties are ordered to confer and attempt to develop a briefing schedule for Claims 24 (willfulness jury instruction), 30 (altered elements of arson), 38 (biased jurors), 51 (vote for life instruction), 54 (no Idaho death penalty in effect at time of crime), and 55 (aggravators not charged by indictment, no probable cause finding, and not supported by facts). The joint or separate proposed briefing schedule(s) shall be filed within **42 days** after entry of this Order.

DATED: March 24, 2018

B. Lynn Winmill
Chief U.S. District Court Judge