LAWRENCE G. WASDEN
Attorney General
State of Idaho

MARK A. KUBINSKI
Deputy Attorney General
Chief, Criminal Law Division

L. LaMONT ANDERSON, ISB #3687
Deputy Attorney General
Chief, Capital Litigation Unit
P.O. Box 83720
Boise, Idaho 83720-0010
Telephone: (208) 334-4539
Facsimile: (208) 854-8074
E-mail: lamont.anderson@ag.idaho.gov

Attorneys for Respondent

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| AZAD HAJI ABDULLAH, | ) | CASE NO. 1:17-cv-00098-DCN |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | RESPONSE TO PETITIONER'S |
| | ) | MOTION FOR SUBSTITUTION |
| TIM RICHARDSON, | ) | OF COUNSEL |
| Warden, Idaho Maximum Security Institution, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |
| _____ | ) | |

COMES NOW, Respondent, Tim Richardson ("state"), by and through his attorney, L. LaMont Anderson, Deputy Attorney General and Chief, Capital Litigation Unit, and hereby responds to Petitioner's ("Abdullah") Motion for Substitution of Counsel ("Motion"). (Dkt. 28.)

RESPONSE TO PETITIONER'S MOTION FOR SUBSTITUTION OF COUNSEL - 1

## BACKGROUND

In 2004, Abdullah was found guilty of the first-degree murder of his wife, Angela Abdullah ("Angie"), first-degree arson stemming from his burning their home at the time he murdered Angie, three counts of attempted first-degree murder stemming from his attempt to murder three children that were in the home when he started the fire, and one count of felony injury to child. State v. Abdullah (Abdullah I), 348 P.3d 1, 20 (Idaho 2015). Abdullah was sentenced to death for Angie's murder, and given prison sentences for his other convictions. Id. at 28. He filed a post-conviction petition that was denied by the trial court after an evidentiary hearing on some of the claims. Id. at 28-29. Abdullah's convictions, sentences, and denial of post-conviction relief were affirmed by the Idaho Supreme Court. *See generally* Abdullah I. The Supreme Court denied certiorari on February 29, 2016. Abdullah v. Idaho, 577 U.S. 1146 (2016).

In 2013, while his consolidated appeal was pending, Abdullah filed his first successive post-conviction petition. Abdullah v. State (Abdullah II), 2021 WL 1305844, *2 (Idaho 2021). The post-conviction court denied the successive petition, and the Idaho Supreme Court affirmed on April 8, 2021. *See generally* Abdullah II.

While the successive post-conviction case was pending, Abdullah sought the appointment of counsel to file a federal habeas petition, and specifically requested that the Capital Habeas Unit of the Federal Defender Services of Idaho ("CHU") be appointed to represent him throughout habeas proceedings. Abdullah v. Ramirez, 1:15-mc-08251-BLW (D. Idaho 2015) (Dkt. 1.) On August 20, 2015, the Honorable Edward J. Lodge granted Abdullah's request and appointed the CHU. Id. (Dkt. 3). On February 24, 2017, under the current case number, Abdullah filed his habeas petition. (Dkt. 1.) Pursuant to the Court's

Order (Dkt. 2, pp.14-15), the parties conferred regarding procedures that might be appropriate considering the early stage of the litigation, which resulted in Abdullah suggesting that eight claims from his petition be briefed on the merits (Dkt.11). After the state responded (Dkt. 12), the Court determined that Claims 24, 38, 51, 54, and 55 be briefed on the merits. (Dkt. 14, p.8.) That briefing has been completed (Dkts. 17, 20, 26), and those five claims have been pending since September 20, 2019.

While the appeal from the first successive post-conviction petition was pending, Abdullah filed a second successive post-conviction petition, contending the state withheld exculpatory evidence in violation of <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), that stems from an affair between Lead Detective Tod Littlefield and Deputy Prosecutor Erika Klein, who was second chair on the case until she was removed. (Dkt. 28-2, pp.8-21.) Abdullah also contended he was denied effective assistance of counsel when his trial attorneys "failed to depose Littlefield and discover the explosive impeachment evidence described in detail in Claim 1." (Id., pp. 21-23.) The post-conviction court dismissed the successive petition because it was untimely under I.C. § 19-2719(5). (Dkt. 28-4, pp.7-14.) Alternatively, the court reasoned Abdullah's first claim was facially insufficient under I.C. § 19-2719(5)(b), which bars claims that allege "matters that are cumulative or impeaching or would not, even if the allegation were true, cast doubt on the reliability of the conviction or sentence." (Id., pp.14-21.) The court also concluded that Abdullah failed to meet his burden of establishing a <u>Brady</u> claim. (Id., pp.21-28.) Abdullah has appealed the court's decision, and the Idaho Supreme Court is awaiting his opening brief. (Appendix A.)

Based upon "a breakdown in their attorney-client relationship" between Abdullah and his current habeas attorneys, Abdullah and the CHU are seeking the withdrawal of the

CHU and the appointment of unknown attorneys from the Federal Community Defender Office for the Eastern District of Pennsylvania ("FCDO"). (Dkt. 28, p.3.)

**ARGUMENT**

The state recognizes that, pursuant to 18 U.S.C. § 3599(a)(2), any death sentenced murderer seeking to set aside a sentence of death under 28 U.S.C. § 2254, "who is or becomes financially unable to obtain adequate representation or investigative, expert, or other reasonably necessary services shall be entitled to the appointment of one or more attorneys and the furnishing of such other services in accordance with sections (b) through (f)." In Martel v. Clair, 565 U.S. 648 (2012), the Supreme Court addressed the very issue Abdullah presents regarding the substitution of counsel in a federal habeas case under 28 U.S.C. § 2254. While adopting an "in the interests of justice" test, the Court recognized the "standard contemplates a peculiarly context-specific inquiry." Id. at 663. And while the Court doubted "that any attempt to provide a general definition of the standard would prove helpful," the Court also recognized that "the courts of appeals have pointed to several relevant considerations" that "generally include: the timeliness of the motion; the adequacy of the district court's inquiry into the defendant's complaint; and the asserted cause for that complaint, including the extent of the conflict or breakdown in communication between lawyer and client (and the client's own responsibility, if any, for that conflict)." Id. The Court further explained that "courts cannot properly resolve substitution motions without probing why a defendant wants a new lawyer," and that "an on-the-record inquiry into the defendant's allegations permits meaningful appellate review of a trial court's exercise of discretion." Id. at 664 (quotes and brackets omitted).

*RESPONSE TO PETITIONER'S MOTION FOR SUBSTITUTION OF COUNSEL - 4*

At this juncture, Abdullah has failed to meet the "interests of justice" test. Outside of unsworn statements in his Motion that "the CHU and [ ] Abdullah have had a breakdown in their attorney-client relationship" and the "professional judgment of the CHU's Supervising Attorney Deborah Czuba" (Dkt. 28, p.3), there is absolutely no evidence establishing the "cause for the complaint" or "the extent of the conflict or breakdown in communication between lawyer and client," including Abdullah's "own responsibility" for the alleged conflict. Additionally, before this Court can grant Abdullah's Motion, this Court must make "an on-the-record inquiry" into his allegations of a "breakdown in their attorney-client relationship." This is particularly important here because the CHU asserts that "Abdullah also express his desire to have the FCDO appointed," but only as "**co-counsel**"; there is no indication that Abdullah desires to have the FCDO appointed without the assistance of other attorneys. (Id., p.4) (emphasis added). As explained in U.S. v. Adelzo-Gonzalez, 268 F.3d 772, 777 (9th Cir. 2001), "the district court may need to evaluate the depth of any conflict between defendant and counsel, the extent of any breakdown in communication, how much time may be necessary for a new attorney to prepare, and any delay or inconvenience that may result from substitution." "[I]n most circumstances a court can only ascertain the extent of a breakdown in communication by asking specific and targeted questions," id. at 777-78, which obviously has not been done here.

Moreover, mere "[d]isagreements over strategical or tactical decision do not rise to the level of a complete breakdown in communication." Stenson v. Lambert, 504 F.3d 873, 886 (9th Cir. 2007). Nor does counsel's failure to raise claims that would be futile constitute a complete breakdown in communication. Chavez v. Sec., Florida Dept. of Corr., 742 F.3d

940, 944 (11th Cir. 2014). Rather, "[a]n irreconcilable conflict in violation of the Sixth Amendment occurs only where there is a complete breakdown in communication between the attorney and client, and the breakdown prevents effective assistance of counsel." Stenson, 504 F.3d at 886; *see also* United States v. Velazquez, 855 F.3d 1021, 2035-36 (9th Cir. 2017). Admittedly, Stenson is based upon the Sixth Amendment, which doesn't apply in the context of federal habeas. *See* Bonin v. Vasquez, 999 F.2d 425, 428-29 (9th Cir. 1993). However, there is no reason to believe that the standard is any different in the context of federal habeas counsel.

Abdullah also contends the "FCDO is willing to substitute in place of the CHU," and "will be able to file an amended petition by June 30, 2022, and that it has the resources to devote to this case and meet its ongoing obligations to [ ] Abdullah and this Court through the completion of the case." (Dkt. 28, p.4.) Although far from clear, presumably, Abdullah uses June 30, 2022, as a cut-off date for the filing of an amended petition to meet the one year statute of limitation under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"). 28 U.S.C. § 2244(d)(1). To be absolutely clear, the state is not conceding that June 30, 2022 marks the cut-off for filing an amended habeas petition, especially in light of the fact that the post-conviction court reasoned that Abdullah's second successive post-conviction was untimely, which the state believes will be affirmed by the Idaho Supreme Court.

Moreover, while Abdullah exalts the resources and abilities of the FCDO, he fails to discuss the experience or abilities of the actual attorney or attorneys who may be representing him. *See* 18 U.S.C. § 3599(b)-(f). The question is not the qualifications of the FCDO or even its supervisor, Shawn Nolan, but whether his current attorneys from the

CHU will be "replaced by similarly qualified counsel." 18 U.S.C. § 3599(f). Indeed, under 18 U.S.C. § 3599(d), while the Court may "for good cause" "appoint another attorney," it must be an individual "whose background, knowledge, or experience would otherwise enable him or her to properly represent the defendant, with due consideration to the seriousness of the possible penalty and to the unique and complex nature of the litigation." There is no reason to believe those requirements do not apply in the context of substituted counsel, but the statute applies to an "attorney," not the FCDO as a whole.

Finally, Abdullah completely ignores the district's local civil rule regarding the appointment of counsel in § 2254 cases involving the death penalty. Pursuant to Dist. Idaho Loc. Civ. R. 9.2(b)(2)(A), petitioners sentenced to death must be appointed counsel "in every such case at the earliest practicable time," "unless the petitioner has clearly elected to proceed pro se" or "is represented by retained counsel." Addressing the qualifications of counsel, Rule 9.2(b)(2)(B), states that when a petitioner makes application for counsel, "the Court **must** appoint the Capital Habeas Unit of the Federal Defender Services of Idaho as lead counsel." (Emphasis added). Upon request by the CHU, "the Court must also appoint an attorney from the Criminal Justice Act (CJA) Capital Habeas Panel as second counsel." Id. Should the CHU be "unable to provide representation because of conflicts, existing workload, or other special factors, it **must** recommend the attorneys from the CJA Capital Habeas Panel to be appointed. The Court will either accept the recommendation or select other attorneys from the CJA Capital Habeas Panel." Id. (emphasis added). The state recognizes that application of the local rules "may be modified by the judge to whom the petition is assigned." Dist. Idaho Loc. R. 9.2(a). However, based upon the mandatory language of sub-rule 9.2(b)(2)(A), it is unclear whether attorneys

outside of the CJA Capital Habeas Panel can be appointed. Irrespective, the CHU has provided no information that local attorneys were even contacted, but appear to have merely contacted the FCDO or other federal defender organizations without any consideration of local attorneys.

This Court has previously addressed the issue of the CHU's failure to have local counsel assist in capital habeas cases. In Creech v. Hardison, #1:99-cv-00224-BLW (Dist. Idaho) (Dkt. 296), the supervising attorney of the CHU sought a stay of the briefing schedule due to medical issues and the inability of co-counsel to take the lead position. At a status conference, the Court discussed the possibility of assigning primary responsibility to co-counsel and assigning another attorney from the Criminal Justice Act Panel as second chair. Id. (Dkt. 306, p.1.) The supervising attorney subsequently contacted four qualified CJA attorneys who were "apparently unwilling to accept an appointment at this time." Id. (Dkt. 306, pp.1-2.) While the Court "reluctantly" concluded it had "no realistic option but to grant counsel's request and extend the deadline," the Court also explained that two attorneys are appointed in capital cases "for just this type of contingency, so that co-counsel can fulfill first chair duties if it becomes necessary." Id. at p.2. More importantly, the Court explained that it "expects the Federal Defender Services and the Capital Habeas Unit to assist the Court in developing a broader pool of qualified CJA attorneys to assist in capital cases and for appointed co-counsel to be prepared to take on lead counsel duties, if needed, in each case." Id.

To date, it does not appear that CHU has complied with the Court's directive. Not only is there no local counsel beyond the CHU in this case, but local counsel has not been appointed in any of the capital cases currently pending before this Court. Before appointing

a federal entity that is nowhere near Idaho, the CHU should be required to at least consult with qualified Idaho attorneys to ascertain their availability. Additionally, the CHU should be admonished again to assist the Court in "developing a broader pool of qualified CJA attorneys to assist in capital cases."

## **CONCLUSION**

The state respectfully requests that Abdullah's Motion for Substitution of Counsel be denied.

DATED this 2nd day of November, 2021.

>  /s/ *L. LaMont Anderson*
>  L. LaMONT ANDERSON
>  Deputy Attorney General
>  Chief, Capital Litigation Unit

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY That on or about the 2nd day of November, 2021, I caused to be serviced a true and correct copy of the foregoing document by the method indicated below, postage prepaid where applicable, and addressed to the following:

| | |
|---|---|
| Bruce D. Livingston | _____ U.S. Mail |
| Jonah J. Horwitz | _____ Hand Delivery |
| Federal Defender Services of Idaho | _____ Overnight Mail |
| Capital Habeas Unit | _____ Facsimile |
| 702 W. Idaho, Suite 900 | __X__ Electronic Court Filing |
| Boise, ID 83702 | |
| Bruce_Livingston@fd.org | |
| Jonah_Horwitz@fd.org | |

/s/ *L. LaMont Anderson*
L. LaMONT ANDERSON
Deputy Attorney General
Chief, Capital Litigation Unit