UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| AZAD HAJI ABDULLAH, | Case No. 1:17-cv-00098-DCN |
|---|---|
| Petitioner, | |
| v. | **MEMORANDUM DECISION AND ORDER** |
| TIM RICHARDSON, Warden, Idaho Maximum Security Institution, | |
| Respondent. | |

# I. INTRODUCTION

Before the Court is Petitioner Azad Abdullah's Motion for Recusal and Vacatur of Order Issued After Grounds Requiring Recusal Arose. Dkt. 51-1. The Court issues its decision today *before* hearing from the Respondent because a response is not necessary. Neither is oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B). For the reasons set forth below, the Court GRANTS in PART and DENIES in PART the Motion.

# II. BACKGROUND

Recently, the Court began sending out notices in certain habeas cases. These cases are unique because of recent changes at the Idaho Attorney General's Office. In short, one (or more) of the attorneys of record for the respondent/s reports to a family member of the undersigned. In the notices the Court sent out, it explained that this situation presents a "potential conflict" and provided Petitioners with thirty days to waive the conflict. The

**MEMORANDUM DECISION AND ORDER - 1**

Court noted if it *did not* receive any waiver by the deadline, the undersigned would recuse himself and reassign the case to another district judge.

Abdullah has apparently "caught wind" of these notices. He filed the instant motion asking the Court to recuse itself because recusal is "required" (as opposed to permissive as outlined in the Court's notices) and to vacate a prior order because that order was purportedly issued after the grounds for recusal arose.

### III. DISCUSSION

The Court appreciates the zealous advocacy of Counsel in this case. However, the ten-page motion, with extensive details about the undersigned and his family, and not-so-thinly veiled accusations of impropriety was unnecessary. A simple request or notice of non-waiver would have sufficed.

Further, to ensure the integrity of the process, to protect Abdullah's rights, and to avoid any confusion later in this case, the Court deems it necessary to touch on a few points raised in his Motion.

#### A. Timing of Notices

First, Abdullah wonders why a notice was not sent in this case when notices were sent in others. And yet, he already knows the answer. He posed this question to the Court, and the undersigned's law clerk explained that the Court was taking essentially a "rolling" approach. In other words, it was sending out notices incrementally so as not to overwhelm

**MEMORANDUM DECISION AND ORDER - 2**

any judge who would inherit the cases.[1] Abdullah outlines the cases he found where that occurred. But, as will be a repeated theme today, Abdullah only has a partial picture of the situation. That is why criticizing the Court's process is particularly disheartening.

The first two cases the Court acted on based upon the potential conflict were not mentioned by Abdullah. Those cases involve an individual on death row. *Pizzuto v. Tewalt*, 1:21-cv-00359-BLW; *Pizzuto v. Tewalt*, 1:21-cv-00267-BLW. In both cases, counsel reached out to the Court to inquire on the matter because there are four total cases, the State of Idaho has issued a death warrant for Mr. Pizzuto, and there were emergency matters to be addressed. This occurred in early January 2023.

Although the Court *did not yet know* whether there was even going to be a conflict—something that will be explained below—the undersigned recused so that matters could proceed uninterrupted. The Court did not even ask for waivers in those cases. Those recusals were entered on January 25, 2023. 1:21-cv-00359-BLW, at Dkt. 67; 1:21-cv-00267-BLW at Dkt. 60.

Next, there were other cases where counsel from *Pizzuto* represented other petitioners. Those attorneys *reached out to the Court* again inquiring how they should approach those matters. The Court informed counsel that it was working with the Administrative Office of the Court ("AO") and the Ninth Circuit for guidance. Ultimately, the Court received that guidance.

---

[1] The undersigned is the only active Article III judge in Idaho. Thus, each case would go to the only senior judge in Idaho. To ease that process, the Court felt it best to transfer the cases in stages.

**MEMORANDUM DECISION AND ORDER - 3**

It is critical to understand that during this same timeframe, the Idaho Attorney General's Office was still trying to determine how the reporting lines would be set up—specifically whether the undersigned's family member would be in a position of supervision over attorneys on cases such as these. Ultimately, those decisions were made. The Court then started sending out notices as already explained.

The Court began with cases where counsel saw a concern and communicated with the Court. On April 7, 2023, the Court issued two notices. *See Dunlap v. Arave*, 1:94-cv-00142-DCN, at Dkt. 175; *Hall v. Yordy*, 1:18-cv-00218-DCN, at Dkt. 88. The Court then moved to cases where there were pending motions. Roughly two weeks later, on April 19, 2023, the Court issued three more notices. *See Shunn v. Richardson*, 1:22-cv-00258-DCN, at Dkt. 59; *Passons v. Christensen*, 1:18-cv-00344-DCN, Dkt. 42; and *Custodio v. Dowell*, 1:21-cv-00351-DCN, at Dkt. 46. The Court was shortly going to send out notices in the remaining affected cases, including this case.

Abdullah takes issue with this approach. He does so primarily because he believes the Court should have provided his notice sooner. The Court will address that in the vacatur discussion later. Suffice it to say, the Court has the power to control its own docket. *See Sarkar v. Garland*, 39 F.4th 611, 617 (9th Cir. 2022) (cleaned up) ("Federal courts have inherent power to control the disposition of the causes on their dockets with economy of time and effort for themselves, for counsel, and for litigants."). It is in the best position to know when cases should be transferred. And the fact that it did so over time does not, as Abdullah suggests, "create . . . the appearance of partiality" between this case and others,

**MEMORANDUM DECISION AND ORDER - 4**

"send the message that a federal judge's obligation . . . is conditional," or "undermine[]" the "public's confidence in the judicial process." Dkt. 51-1, at 9–10.

## B. Recusal

More important than timing, however, is Abdullah's contention that the conflict here *requires* recusal and that the Court has been dilatory, if not wholly incorrect, in its approach to the problem. Not so.

The Court takes its duty of impartiality very seriously. Based upon guidance from the AO, the Ninth Circuit, the Judicial Code of Conduct, and various advisory opinions issued by the Committee on the Codes of Conduct, the Court developed the procedure it is currently using.

A judge's recusal is governed by 28 U.S.C. § 455 and the Code of Conduct for United States Judges. Specifically, Canon 3(C)—entitled "Disqualification"—is where the Court's focus lies.

Canon 3(C)(1) provides a non-exhaustive list of certain situations that require a judge's recusal. That list does not explicitly state that the current situation requires recusal. Canon 3(C)(1)(d) is the subsection the Court cited in its notices because that was the *closest* to the situation at hand.[2] Nevertheless, the actual conflict here is not of the nature *automatically* requiring recusal. Abdullah is correct, however, that an *advisory opinion*

---

[2] It should be remembered that these notices are going to Petitioners most of whom *are not* represented by Counsel. Instead of issuing a highly technical legal notice—or issuing a multi-page order like it has been forced to do today—it elected to keep the notice simple and straightforward.

**MEMORANDUM DECISION AND ORDER - 5**

from Committee states recusal is necessary in similar circumstances.[3] That opinion outlines the situation here:

> Acting as a supervisor. Recusal is also necessary if the relative has supervisory responsibility over the attorney handling a case before the judge, even if the relative is not personally involved and has no knowledge of the case. Such a circumstance falls within Canon 3C(1)'s "catch-all" provision requiring disqualification in a proceeding "in which the judge's impartiality might reasonably be questioned." Disqualification under this catch-all provision is subject to remittal under Canon 3D.

Comm. on Codes of Conduct, Advisory Opinion No. 38, Disqualification When Relative Is an Assistant United States Attorney (2009).[4]

Importantly, however, that advisory opinion reminds the reader that "disqualification under [Canon 3(C)(1)] is subject to remittal under Canon 3D." *Id*.

Canon 3D in turn states that:

> Instead of withdrawing from the proceeding, a judge disqualified by Canon 3C(1) may, except in the circumstances specifically set out in subsections (a) through (e), disclose on the record the basis of disqualification. The judge may participate in the proceeding if, after that disclosure, the parties and their lawyers have an opportunity to confer outside the presence of the judge, all agree in writing or on the record that the judge should not be disqualified, and the judge is then willing to participate.

Code of Conduct, Canon 3(D). *See also* 28 U.S.C. 455(e).

---

[3] The opinion letter addresses the situation where the relative is an assistant United States Attorney who works for the federal government. The undersigned's situation involves a relative who is a deputy attorney general who works for the state of Idaho. Nevertheless, the Court has applied the opinion letter to this case.

[4] This is the exact language quoted by Abdullah in his brief, and yet he ignores the final language about disclosure and waiver and argues that recusal is mandatory. The Court would also note its decision was influenced by the Guide to Judiciary Policy, Compendium of Selected Opinions § 3.2-4(c)–(d). The Compendium is available to federal judges and their staffs but not the public. It collects and summarizes the confidential opinions of the Judicial Conference's Codes of Conduct Committee.

In this case, the undersigned is "disqualified by Canon 3(C)(1)" because of the relationship at issue. However, because the reason for disqualification is not one of the enumerated circumstances in subsections (a) through (e), the undersigned has two options" withdraw or disclose. In light of the shortage of judges in the District of Idaho, the undersigned chose to disclose and seek waivers. In fact, two such waivers have already been returned. *Passons v. Christensen*, 1:18-cv-00344-DCN, Dkt. 43; *Custodio v. Dowell*, 1:21-cv-00351-DCN, at Dkt. 51.

The Court used the statutory mechanism to deal with this conflict. Such was appropriate.[5]

### C. Vacatur

Finally, Abdullah asks the Court to vacate a decision it issued on March 13, 2023, because the "conflict had already arisen." Dkt. 50. Again, the Court, not Abdullah, knows when the conflict actually arose (i.e. when the Attorney General's Office made its final decision on staffing and supervisor duties).[6] The order the Court issued on March 13, 2023, was appropriate. Abdullah does not object to the parts of the Court's order that were "uncontested and ministerial in nature," Dkt. 51-1, at 8 n.3, but he does object to the Court's

---

[5] As already noted, Abdullah appears to recognize this. While repeatedly saying that "recusal is required," Dkt. 51-1, at 5, 7, 9, he admits that "waiver is permitted," Dkt. 51-1, at 6, 7. It is somewhat disingenuous to argue something is "required," and impugn the Court's handling of the matter, while simultaneously recognizing there is a mechanism that allows for waiver—and that mechanism is exactly what the Court utilized in this case.

[6] The Court recognizes that the newspaper article cited by Abdullah announcing the relative's promotion came out in January 2023. However, the decision by the Attorney General as to which attorneys in his office would be supervised by the relative and which would not was not made until months later. Once that decision was made, the Court began the process describe above about "rolling notices."

**MEMORANDUM DECISION AND ORDER - 7**

order that denied his motion. Importantly, the Court denied his motion without prejudice. Dkt. 50, at 5. The Court specifically said he could refile if circumstances changed. *Id*. Furthermore, the denial simply set out deadlines (*months* away) and reiterated that the case would keep moving forward. If Abdullah wishes to refile the motion with the next judge assigned to the case, he may do so—assuming the motion is still legally and procedurally accurate; he cannot refile simply because the Court is not vacating its order.

## IV. CONCLUSION

The Court has reiterated the following: judicial ethics are a high priority. The public's trust and confidence in the third branch of government rests largely on those individuals entrusted to carry out its duties. The Court is not agitated that Abdullah elected not to waive the conflict. Such is his right. The Court is simply observing there were much simpler ways to go about achieving that goal; ways that did not involve questioning the Court or challenging its actions when so little was known about the decisions and parameters that went into that process.

Nevertheless, Abdullah has indicated he will not waive the conflict. Accordingly, the undersigned will recuse.

The Court will not, however, vacate its prior order. The order was properly entered before the conflict at issue was solidified. If Abdullah wishes to re-file the motion with the next assigned judge, he may do so and that judge can decide whether to vacate, modify, or enforce the existing order.

## V. ORDER

1. Abdullah's Motion (Dkt. 51) is GRANTED in PART and DENIED in PART as outlined above.

2. The Court will not vacate its prior order.

3. Considering Abdullah's indication he will not waive the potential conflict at issue, the undersigned recuses himself from all further proceedings in this matter. The Clerk of the Court shall reassign this case to another District Judge.

DATED: May 23, 2023

David C. Nye
Chief U.S. District Court Judge